## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

DALLAS BUYERS CLUB, LLC,

a Texas Limited Liability Company,

    Plaintiff,

vs.

JOHN DOES 1-9,

    Defendants.

---

## DECLARATION OF DANIEL MACEK IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE LIMITED EXPEDITED DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

---

1. My name is Daniel Macek. I am over the age of 18 and am otherwise competent to make this declaration. This declaration is based on my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.

2. I have been retained as a consultant by Crystal Bay Corporation CBC ("CBC"), a company incorporated in South Dakota and organized and existing under the laws of the United States, in its technical department. CBC is in the business of providing forensic investigation services to copyright owners.

3. The Internet is a vast collection of interconnected computers and computer networks that communicate with each other. It allows users to freely and easily exchange ideas and information, including academic research, literary works, financial data, music, audiovisual works, graphics, and an unending and ever-changing array of other data.

Exhibit 1

4. The Internet also affords opportunities for the wide-scale infringement of copyrighted motion pictures and other digital content.

5. Once a motion picture has been transformed into a digital format, it can be copied further and distributed an unlimited number of times over the Internet, without significant degradation in picture or sound quality.

6. To copy and distribute copyrighted motion pictures over the Internet, many individuals use online media distribution systems or so-called peer-to peer ("P2P") or BitTorrent networks. P2P networks, at least in their most common form, are computer systems that enable Internet users to (1) make files (including motion pictures) stored on each user's computer available for copying by other users; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet.

7. To use a P2P or BitTorrent distribution system requires more than a click of a button. A software installation and configuration process needs to take place.

8. The P2P systems enable widespread distribution of digital files: each user of the system who copies a digital file from another user can then distribute the file to other users and so on, so that complete digitial copies can be easily and quickly distributed thereby eliminating long download times.

9. While Plaintiff has observed the infringement occurring on the Internet, it does not know the true identities of those individuals who are committing the infringement.

10. Additionally, the P2P methodologies for which Crystal Bay Corporation monitored for Plaintiff's Motion Picture make even small computers with low bandwidth capable of participating in large data transfers across a P2P network. The initial file-provider intentionally elects to share a file using a P2P network. This is called "seeding." Other users ("peers") on the network connect to the seeder to download. As additional peers request the same file, each

2

additional user becomes a part of the network (or "swarm") from where the file can be downloaded. However, unlike a traditional peer-to-peer network, each new file downloader is receiving a different piece of the data from each user who has already downloaded that piece of data, all of which pieces together to comprise the whole.

11. This means that every "node" or peer user who has a copy of the infringing copyrighted material on a P2P network can also be a source of download for that infringing file, potentially both copying and distributing the infringing Motion Picture. The distributed nature of P2P leads to rapid spreading of a file throughout peer users. As more peers join the swarm, the likelihood of a successful download increases. Because of the nature of a P2P protocol, any seed peer who has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a possible source for the subsequent.

12. All infringers connected to those files are investigated through downloading a part of the file placed on their computer.

13. This evidence is then saved on a secure server.

14. Once the searching software program identifies an infringer in the way described herein for the Motion Picture for which Plaintiff owns the exclusive licensing and distribution rights, it automatically obtains the IP address of a user offering the file for download and saves it in a secure database.

15. The forensic software routinely collects, identifies and records the Internet Protocol ("IP") addresses in use by those people who employ the BitTorrent protocol to share, copy, reproduce and distribute copyrighted works. In this way the software is connected to files of illegal versions of the Motion Picture.

16. An IP address is a unique numerical identifier that is automatically assigned to an internet user by the user's Internet Service Provider ("ISP"). It only enables Plaintiff to trace the

infringer's access to the Internet to a particular ISP. An ISP can be a telecommunications service provider such as Verizon, an Internet service provider such as America Online, a cable Internet service provider such as Comcast, or even an entity such as a university that is large enough to establish its own network and link directly to the Internet. Each time a subscriber logs on, he or she may be assigned a different (or "dynamic") IP address unless the user obtains from his/her ISP a static IP address. ISPs are assigned certain blocks or ranges of IP addresses by the Internet Assigned Numbers Authority ("IANA") or a regional internet registry such as the American Registry for Internet Numbers ("ARIN"). However, some ISPs lease or otherwise allocate certain of their IP addresses to other unrelated, intermediary ISPs. These intermediaries can be identified by the ISP and the intermediaries own logs will contain the subscriber information.

17. In logs kept in the ordinary course of business, ISPs keep track of the IP addresses assigned to their subscribers. Once provided with an IP address, plus the date and time of the detected and documented infringing activity, ISPs can use their subscriber logs to identify the name, address, email address, phone number and other related information of the user/subscriber.

18. Only the ISP to whom a particular IP address has been assigned for use by its subscribers can correlate that IP address to a particular subscriber. From time to time, a subscriber of internet services may be assigned different IP addresses from their ISP. Thus, to correlate a subscriber with an IP address, the ISP also needs to know when the IP address was being used.

19. Crystal Bay Corporation determined that the Doe Defendants identified in Complaint Exhibit A were using the ISPs listed in the exhibit to gain access to the Internet and distribute and make available for distribution and copying Plaintiff's copyrighted motion picture.

20. It is possible for digital files to be mislabeled or corrupted; therefore, Crystal Bay Corporation (and accordingly, Plaintiff) does not rely solely on the labels and metadata attached to the files themselves to determine which motion picture is copied in the downloaded file, but also

to confirm through a visual comparison between the downloaded file and the Motion Picture themselves.

21. As to Plaintiff's copyrighted Motion Picture, as identified in the Complaint, a member of Crystal Bay Corporation watches a DVD of the original Motion Picture.

22. After Crystal Bay Corporation identified the Doe Defendants and downloaded the motion pictures they were distributing, Crystal Bay Corporation opened the downloaded files, watched them and confirmed that they contained the Motion Picture identified in the Complaint.

23. To identify the IP addresses of those BitTorrent users who were copying and distributing Plaintiff's copyrighted Motion, Crystal Bay Corporation's forensic software scans peer-to-peer networks for the presence of infringing transactions.

24. After reviewing the evidence logs, I isolated the transactions and the IP addresses of the users responsible for copying and distributing the Motion Picture.

25. Through each of the transactions, the computers using the IP addresses identified in Complaint Exhibit A transmitted a copy or a part of a copy of a digital media file of the copyrighted Motion Picture identified by the hash value set forth in Complaint Exhibit A. The IP addresses, hash values, dates and times contained in Complaint Exhibit A correctly reflect what is contained in the evidence logs. The subscribers using the IP addresses set forth in Complaint Exhibit A were all part of a "swarm" of users that were reproducing, distributing, displaying or performing the copyrighted Motion Picture.

26. Moreover, the users were sharing the exact same copy of the Motion Picture. Any digital copy of an audiovisual work may be uniquely identified by a unique, coded, string of characters called a "hash checksum." The hash checksum is a string of alphanumeric characters generated by a mathematical algorithm known as US Secure Hash Algorithm 1 or "SHA-1." By

using a hash tag to identify different copies of the Motion Picture, CBC was able to confirm that these users reproduced the very same copy of the Motion Picture.

27. The CBC software analyzed each BitTorrent "piece" distributed by each IP address listed in Complaint Exhibit A and verified that reassembling the pieces using a specialized BitTorrent client results in a fully playable digital motion picture.

28. The software uses a geolocation functionality to determine the location of the IP addresses under investigations. The location of each IP address is set forth in Complaint Exhibit A. IP addresses are distributed to ISPs by public, nonprofit organizations called Regional Internet Registries. These registries assign blocks of IP addresses to ISPs by geographic region. Master tables correlating the IP addresses with local regions are maintained by these organizations in a publicly-available and searchable format. An IP address' geographic location can be further narrowed by cross-referencing this information with secondary sources such as data contributed to commercial database by ISPs.

**FURTHER DECLARANT SAYETH NAUGHT.**

**DECLARATION**

PURSUANT TO 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 7 day of April, 2015.

By: _____
Daniel Macek